UNITED STATES DISTRICT COURT EASTERN
DISTRICT OF WISCONSIN

U.S. District Court
Wisconsin Eastern

NOV 2 2023

FILED
Clerk of Court

MIKO THOMAS,

        Plaintiff,

v.

                                Case No.: 23-CV-861-WCG

JBS Green Bay, Inc et al,

        Defendant.

---

**PLAINTIFFS RESPONSE TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

Now comes Plaintiff, appearing pro se, hereby responds to and refutes the defendant's argument contained in their Reply in Support of Motion to Dismiss Plaintiff's Complaint.

1. The defendant claims that Plaintiff's Motion to Dismiss the Complaint attempts to reframe and reimagine the allegations in an effort to cure its fatal defects. This is in error and assumptive. Plaintiff asserts that their Motion is not an attempt to reframe or reimagine the allegations but rather a response to the defendant's arguments.

2. The defendant contends that the Complaint still fails to state a claim upon which the Court can grant relief and must be dismissed in its entirety. In contrast, Plaintiff maintains the original Complaint complies with all relevant pleading standards and adequately states a claim for relief. The defendant's Reply in Support of its Motion to Dismiss fails to provide convincing arguments that warrant the dismissal of the Complaint. Plaintiff maintains the original Complaint, is appropriately substantiated and should not be dismissed.

**A. Plaintiff's Retaliation Claim, Even When the Allegations are Viewed Collectively, Fails to State a Claim.**

The defendant argues that "JBS," the named Defendant, does not exist as a legal entity and, therefore, cannot be

Plaintiff's employer. However, the plaintiff has consistently addressed their interactions, documents, emails, trainings, and communications with "JBS," From the outset of their employment, the defendant has presented itself as "JBS," and has not explicitly identified itself as "JBS Green Bay, Inc." Plaintiff has acted in good faith by addressing "JBS," as their employer, as it was the name consistently used and still used by the defendant in all interactions. Further, as noted in *Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227 (1962),* "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."1 While defendant may argue that plaintiff had a duty to investigate its precise legal name, plaintiff was reasonable in accepting defendant's own representations. Any such duty to investigate is negated by defendant's consistent holding out of itself as "Company". Plaintiff did not willfully misidentify the defendant as "JBS," Instead, they relied on the entity's representation and communication that referred to itself as "JBS," To hold the plaintiff accountable for the defendant's decision to use the name "JBS," in its dealings with the plaintiff would be unjust and contrary to the principle of fair representation.

Additionally, under the liberal pleading standards outlined in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."2 Defendant cannot now claim unfair surprise or prejudice when it chose to consistently refer to itself as "JBS," in all of its dealings with plaintiff.

It is the defendant's responsibility to provide clear and accurate information about its legal entity when interacting with employees, particularly during the onboarding process and throughout the course of employment. The plaintiff acted in good faith by addressing "JBS," as their employer, given the consistent use of this name by the defendant. Therefore, the defendant's argument that "JBS," cannot be Plaintiff's employer is not valid, as it fails to consider the defendant's own representations and conduct throughout the employment relationship.

In summary, the plaintiff identification of "JBS," as their employer is based on the defendant's own consistent representations as such, and he has acted in good faith reliance on this. Further, the claims have been sufficiently

pled under notice pleading standards.3 Dismissal for any technical deficiency in naming would unfairly punish plaintiff for defendant's own actions. The interests of justice strongly favor allowing amendment if needed, rather than dismissal. Plaintiff has established their entitlement to relief against Defendant "Company".

1 **Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227 (1962) (stating leave to amend should be freely given when justice requires)**
2 **Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957)) (establishing liberal notice pleading standard under Rule 8)**
3 **Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957)) (establishing liberal notice pleading standard under Rule 8)**

It's important to note that the defendant acknowledges the plaintiff's engagement in protected activity, which is an essential element of a retaliation claim. This aligns with the essential element of a retaliation claim, which is not under dispute. Moreover, the defendant has a duty to investigate and respond to all complaints of retaliation, regardless of their severity, as this duty is critical in preventing the development of a hostile work environment, and consistent with defendant internal policy.

As held in *Faragher v. Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998)* "[W]e hold that the cumulative effect of individual acts of harassment can create a hostile work environment even if no single act would be sufficiently severe or pervasive to constitute harassment."

The defendant contends that the plaintiff's alleged adverse actions may not meet the threshold for a retaliation claim. In response, the cumulative impact of these actions should be considered, and is supported by case law. *Yanowitz v. L'Oreal USA Inc., 36 Cal.4th 1028, 32 Cal. Rptr. 3d 436, 116 P.3d 1123 (Cal. 2005)* clarifies that "[A]n employee may establish a claim of retaliation under Title VII by showing that the employer took an adverse employment action against the employee because the employee engaged in protected activity."

Even if individual actions appear insufficient, their collective effect can establish a hostile work environment or retaliation. This interpretation aligns with established legal precedent, such as *Von Gunten v. Maryland, 243 F.3d*

*858 (4th Cir. 2001)* "First, the district court erred in failing to consider the sum total of abuse that Ms. Gunten suffered over the entire course of her employment. Rather, the court examined each incident in a vacuum, found each insufficient on its own to establish discrimination. This analysis ignores the way racial harassment may occur. As we have recognized, '[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.' The fact that any individual act by Gunten's fellow employees was not alone actionable does not mean that the totality of this harassment over the tenure of her employment should be ignored. Also As recognized in *Robinson v. Ford Motor Company, No. 1:04-CV-00844, No. 1:04-CV-00845 (S.D. Ohio Jun. 15, 2005),* "An employer's retaliatory conduct may be actionable under Title VII even if it does not rise to the level of an adverse employment action if it changes the terms and conditions of employment. This is because Title VII is designed to protect employees from retaliation for engaging in protected activity, and retaliation that changes the terms and conditions of employment can have a chilling effect on employees' willingness to exercise their rights under Title VII."

The defendant questions whether the plaintiff's protected activity was the "but for" cause of the alleged adverse actions. While the defendant's attorney raises this issue, it's imperative to emphasize that a comprehensive analysis of the detailed factual allegations is necessary to determine the existence of a "but for" relationship. The plaintiff does not need to prove that their protected activity was the sole cause of the adverse actions; it is sufficient to demonstrate that it was a contributing factor "To establish a causal connection between the protected activity and the adverse employment action, the plaintiff need not prove that the protected activity was the sole cause of the adverse employment action. It is sufficient to show that the protected activity was a contributing factor." *Von Gunten v. Maryland, 243 F.3d 858 (4th Cir. 2001)*

The defendant argues to disregard additional allegations and documents provided in the plaintiff's response. Contrary to the defendant's stance, it's vital to clarify that these additional facts, context, and documents serve to elucidate and support the claims presented in the original complaint. They do not seek to amend the complaint

but rather provide extra context and evidence. Dismissing them prematurely may not be appropriate, as they are relevant to the plaintiff's arguments. By doing so, the defendant is essentially asking the court to rule on the plaintiff's claims without all of the facts.

The exhibits attached by the plaintiff, included the company policy on discrimination, anti-harassment, and retaliation. The job expectations for the department both A and B shift, and the CEO's letter against discrimination, harassment, and retaliation are directly relevant to supporting the existing claims in the complaint. They do not introduce entirely new allegations or claims and should be considered as supporting evidence. The defendant appears to be deceptive in stating these exhibits create new claims when they only support and show the contradictions in the defendant's response and what the company publishes and distributes to its employees.

The Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir. 1989) case is not applicable because it involved entirely new allegations raised in a brief opposing dismissal, unlike the exhibits that the plaintiff has presented. This case held that "a plaintiff may not defeat a motion to dismiss by raising new claims in a responsive pleading.

Therefore, the defendant's request to disregard additional allegations and documents in the plaintiff's response is unwarranted. These exhibits are relevant supporting evidence that do not introduce new claims. The exhibits in the present case do not raise new claims. They simply provide context and support for the existing claims without introducing new allegations. Therefore, the Thomason case is distinguishable from the present case and is not applicable."

1. **Plaintiff Cannot Show He Suffered any Adverse Actions**.

The defendant contends the alleged actions do not qualify as adverse employment actions under Title VII. However, this narrow view overlooks the cumulative effect of the alleged actions in creating a hostile work environment, which can constitute an adverse action. As the Supreme Court held in *Nat'l R.R. Passenger Corp.*

*v. Morgan, 536 U.S. 101, 115 (2002)*, courts must consider "A hostile work environment claim is not a series of discrete acts, but rather a single unlawful practice that may be comprised of acts that occur over time. Therefore, it is necessary to consider the entire scope of the claim, including acts that occurred outside the statutory time period, in order to assess the collective impact of the harassment."

In accordance with *Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006)*, an adverse employment action is defined as a materially adverse change in the terms and conditions of employment (p. 61). This precedent reinforces the principle that even minor actions can be deemed adverse if they discourage a reasonable worker from making or supporting a charge of discrimination (p. 68).

While the defendant claims the actions were trivial, the plaintiff asserts that collectively they would dissuade a reasonable worker from raising a discrimination complaint. The undeserved negative evaluation, as seen *in White v. Burlington Northern & Santa Fe Railway Co., 364 F.3d 789, 798 (6th Cir. 2004)*, can indeed constitute an adverse employment action, particularly if it could impact future advancement opportunities. An employer's performance evaluation is critical in decisions regarding promotions, raises, and other employment opportunities.

The co-worker's 8-month permanent shift change making the plaintiff's job more difficult, leaving him isolated, aligns with the principle expressed in Rodriguez v. Bd. of Ed. of Eastchester U. Free, 620 F.2d 362 (2d Cir. 1980), where the transfer itself was recognized as an adverse employment action. The perceived professional stigmatization due to such a transfer is indicative of adverse actions collectively creating a hostile environment.

The failure to investigate, as suggested in *Keeley v. Small, 391 F. Supp. 2d 30 (D.D.C. 2005)* emphasizes that a hostile work environment is not confined to overt acts of discrimination but may also be created by a series of minor slights and indignities that undermine an employee's working conditions (pp. 45-46).

The delayed training and the subsequent actions by HR, corporate, and the defendant not conducting a proper

investigation align with Walker v. Thompson, 214 F.3d 615 (5th Cir. 2000), which states that all discriminatory acts should be considered cumulatively when assessing a hostile work environment claim (p. 626).

The defendant cites Williams v. Bristol-Myers Squibb Co. to argue these were minor disputes. However, it does not support dismissing the plaintiff's allegations as trivial.

**Comparison with Williams Case:**

Plaintiff's timeline in this case differs from the Williams case in several ways:
- First, in the Williams case, the plaintiff was transferred to a less desirable position, while in this case, the plaintiff's shift was permanently changed for 8 months making job difficult.
- Second, in the Williams case, the plaintiff filed a complaint with HR for retaliation after the transfer, while in this case, the plaintiff filed a complaint with HR for retaliation immediately after receiving the write-up/undeserved negative evaluation. Plaintiffs' co-worker was transferred permanently for 8 months after the complaint was filed. Plaintiff perceived the write-up as retaliatory and explained exactly to HR in a detailed complaint where the plaintiff made the defendant aware that the plaintiff believes his color was the reason for its agents' actions and why. While the plaintiff in the Williams case did not perceive the transfer as retaliatory until after it had taken place.

- Third, in the Williams case, the plaintiff did not file a complaint with the EEOC until after the corporate office failed to properly investigate the plaintiff's discrimination and retaliation claims. As highlighted in Equal Employment Opportunity Commision v. Walgreen Co., Case No. 11-cv-04470-WHO (N.D. Cal. Apr. 11, 2014) employees have the right to complain about discrimination without fear of retaliation (p. 895). In contrast, Plaintiff in this case filed a complaint with the corporate office for discrimination and retaliation after the internal HR failure to investigate claims of discrimination and retaliation. When it became clear to the plaintiff that the internal HR and corporate had no intention of solving the issue by conducting a proper investigation, because they failed

to thoroughly investigate all witnesses and conduct a proper investigation, which may have led to a fair resolution, this is what caused Plaintiff to file a complaint with the EEOC in April 2022. It's also worth noting that the EEOC did not just dismiss the plaintiffs' claims as minor or trivial as stated in the right to sue letter: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. It is also worth noting to add context and not introduce a new claim, the defendant denied mediation which plaintiff agreed to, as a solution to remedy this issue.

-Furthermore, while the citation "[O]therwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit. The Equal Employment Opportunity Commission, already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial." Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996). May appear as if it supports defendants' response, however when one reads the case and see the differences such as defendants acts towards plaintiff occurred after the discrimination and retaliation complaint was filed, it becomes clear that this case may be misapplied here.


Defendant states "There are certainly cases where a collection of separate actions, when considered together, may be found to have the effect of dissuading a reasonable worker from making or supporting a charge of discrimination — this is not that case. Plaintiff's Complaint fails to sufficiently allege a legally cognizable adverse employment action to survive this Motion. However, the defendant's statement that is in error for several reasons.


First, the defendant is misconstruing the standard for pleading a retaliation claim. In order to plead a retaliation claim, an employee does not need to allege a single, severe adverse employment action. Instead, an employee can allege a series of smaller adverse employment actions that, when considered together, have the effect of dissuading a reasonable worker from making or supporting a charge of discrimination.

Second, the defendant is ignoring the plaintiff's specific allegations. The plaintiff has alleged that they were issued a write-up/underserved negative evaluation for doing exactly what they were told to do, that their shift was permanently changed when co-worker was moved for 8 months after filing the complaint, isolating them and making their job more difficult, and that HR, corporate, and the defendant failed to thoroughly investigate all witnesses and conduct a proper investigation.

These allegations, when considered together, suggest that the plaintiff has been subjected to a hostile work environment. A hostile work environment is a form of retaliation, and it is a legally cognizable adverse employment action.

Third, the defendant is making a prediction about how a court would rule on the plaintiff's case without having seen any evidence. It is impossible to predict with certainty how a court would rule on a case without seeing the evidence. Therefore, the defendant's statement that the plaintiff's case is not strong enough to survive a motion to dismiss is premature and unfounded.

Also, while we are addressing this issue, I want to point out that the defendant has not provided a legitimate, nondiscriminatory reason for its actions and its agents' actions, which the defendant has had multiple chances to do, including this response: the burden must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection' *(McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)*. "The employer need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff" *Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981)*. 'An employer who has not persuaded the trier of fact that it would have made the same decision even if it had not unlawfully discriminated must be held liable' *Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775 (1989)*

In summary, the defendant fails to address how the alleged actions collectively impacted the plaintiff's work environment. Plaintiff alleges that the actions outlined, when viewed collectively, would dissuade a reasonable worker from making a discrimination complaint, meeting the standard for an adverse action under Title VII.

## 2. Plaintiff Cannot Show that His Complaints were the "But For" Cause for Any Alleged Actions.

The defendant contends that I have failed to plausibly allege "but for" causation between my protected activity and the alleged adverse actions taken against me. However, this argument misinterprets the fundamental nature of retaliation claims under Title VII and makes unjustified assumptions about what would have happened absent my complaints.

### 1. Write-Up Allegation

The defendant asserts that my write-up in April 2022 fails to meet the causation standard. However, my initial complaint to HR in January 2022 alleging retaliation and discrimination directly preceded the alleged adverse actions. As established in *Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503, 24 Fla. L. Weekly Supp. 366 (2013)*, temporal proximity between protected activity and an adverse action can support a reasonable inference of causation.

### 2. Colleague's Transfer

The defendant claims that my colleague's shift change in February 2022 does not plausibly establish "but for" causation. However, this transfer occurred shortly after my January 2022 complaint, demonstrating close temporal proximity. As held in *Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 252 (4th Cir. 2015)*, such timing between protected activity and adverse action can establish causation for a prima facie case of retaliation under Title VII. Thus, the shift change supports an inference of causation based on its close timing after my initial complaint.

### 3. Failure to Investigate Complaint

The defendant contends that my March 2022 complaint to corporate and the subsequent lack of investigation do not imply a causal connection. However, the close timing between these events supports an inference of causation. As the First Circuit stated in Calero-Cerezo v. U.S. Department of Justice, 355 F.3d 6, 25–26 (1st Cir. 2004), temporal proximity between a complaint and an adverse action can establish causation for Title VII retaliation claims. Here, the proximity between my complaint and the defendant's failure to investigate makes a retaliatory motive plausible. Thus, the defendant's position on this issue is unpersuasive.

## 4. Denial of Highlift Training

Regarding the highlift training issue, I was never trained, while my co-workers received training. I attempted to receive training since 2019. However, my manager consistently refused to provide the necessary training, despite it being a crucial part of my job. Initially, my co-worker was trained so it was not a significant issue. However, after February 2022, this became a substantial problem. Starting in February, I repeatedly requested training, but my requests were consistently denied. I was never provided with a substantial reason as to why everyone else was receiving proper training while I was not. This lack of training began to significantly impact my ability to perform my job effectively. Despite my best efforts, both HR and corporate did not take any action. Even the fact that I had prescription glasses at the time did not seem to matter.

It wasn't until I filed a formal complaint with the EEOC in April 2022 that the defendant attempted to offer highlift training in June 2022. Unfortunately, a mechanic accidentally stepped on my glasses at the end of May 2022, rendering me unable to complete the highlift training. The issue here is that the defendant and its officers ensured that everyone in the department received training, but it took the formal complaint with the EEOC for me to even be offered the mandatory training required to perform the job. This situation satisfies temporal proximity, as emphasized in Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 252 (4th Cir. 2015). "Allegations that the defendant was aware of the plaintiff's protected activity, coupled with the timing of the adverse actions, can establish causation for a prima facie case of retaliation," which is a critical factor in supporting a plausible inference of causation. Therefore, the defendant's assertion that these complaints were not causally related to the

adverse actions is unpersuasive.

## 5. Refutation of "Self-Fulfilling Prophecy" Argument

a) The defendant asserts that I rely on my own complaints to the company to establish a "persistent pattern of retaliation. " Plaintiff relies entirely on his own actions of repeatedly complaining to Defendant to paint a "persistent pattern of retaliation" and show "but for" causation. Plaintiff's own complaints, however, are not adverse actions that occurred as a result of his protected activity (i.e. his own complaints). Plaintiff's argument represents his own self-fulfilling prophecy" However, it is important to emphasize that my complaints were made in response to actions taken by the defendant's agents against me. My complaints do not constitute the adverse actions, but rather were made in response to the defendant's own retaliatory actions. As such, my narrative does not create a self-fulfilling prophecy, but instead highlights a sequence of events demonstrating that the defendant's actions were retaliatory. The defendant's assertions to the contrary are merely opinions and conjecture by its attorney, not evidence from agents with direct knowledge.

b) The defendant's argument that this sequence of events does not qualify for Title VII protection is legally inaccurate and disregards precedent such as *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511–14 (2002)*. "A prima facie case of retaliation under Title VII is established when the plaintiff shows (1) that she engaged in a protected activity, (2) that the defendant was aware of the protected activity, (3) that the defendant took adverse action against the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse action., as there is here based on the timeline. My complaints were in response to retaliatory actions, not the cause of them.

## 6. Conclusion

At the motion to dismiss stage, I need only plausibly allege facts supporting causation under Twombly/Iqbal, not conclusively prove "but for" causation. My detailed timeline establishes a chronology that makes causation plausible under the precedent cited. Therefore, dismissal is inappropriate and my retaliation claim should proceed.

I have satisfied the pleading requirements.

## B. Plaintiff Has Failed to Sufficiently Allege that He was Discriminated Against Or Harassed Because of His Color.

1. The defendant inaccurately portrays the plaintiff as 'admitting' that the alleged actions do not qualify as adverse. In fact, the plaintiff argued that the collective impact raises concerns about a hostile environment. This underscores the plaintiff's stance that the totality of circumstances should be considered. My argument is that this was a pattern of behavior targeted at the plaintiff. My argument focuses on the fact that these issues, in isolation across long periods of time, may not meet the criteria needed to assert a valid claim. However, when these issues are compounded in close proximity and happen after one engages in a protected activity, such as filing a complaint, the corresponding actions should be viewed in totality, and the circumstances should be considered. Therefore, the defendant's statement that 'Plaintiff recognizes that "the denial of vacation and accusations of inadequate work performance may not, in isolation, qualify as severe adverse employment actions' is inaccurate."

2. The defendant cites the Atanus case out of context, referring to it as a standard for adverse employment actions. However, it's crucial to recognize that the Atanus case involved schedule changes and an added training program, which is substantially different from the allegations in this case. This context is essential for a fair assessment.

The court in *Atanus v. Perry, 520 F.3d 662 (7th Cir. 2008)*, discusses the requirements for adverse employment actions. They state that generally, adverse employment actions are found in cases involving significant changes in employment status, such as firing, denial of promotion, reassignment to a position with significantly different job responsibilities, or actions causing substantial changes in benefits. On the other end of the spectrum, not everything that makes an employee unhappy is considered an actionable adverse action. For example, the court held that a mere change in work schedule, without more, does not constitute an adverse employment action.

The court further reiterates that they have found similar employment actions causing minor disruptions in an

employee's schedule not to be adverse employment actions, citing the Grube case (257 F.3d at 728), where the employee's evidence was insufficient to establish a materially adverse action.

In the context of Atanus, the actions alleged by the plaintiff included minor alterations in her work schedule and an added training obligation. These were characterized as minor harms that were not actionable adverse employment actions.

In contrast, the actions alleged in the present case, including unwarranted write-ups and undeserved negative evaluations, denial of highlift training opportunities, permanent reassignment of a coworker that increased workload, and failure to properly investigate harassment complaints, are significantly more substantial in altering the terms and conditions of employment. Atanus distinguished minor schedule changes from actions like denial of promotion or changes in job responsibilities.

The direct language from Atanus demonstrates that the facts involved scheduling changes of a very different nature and degree than the adverse actions alleged in this case. Applying its holding out of context overlooks these meaningful distinctions.

3. The standard quoted from Atanus, which defines adverse employment actions as "more than a mere inconvenience," is dicta and not binding. It's important to note that this standard is not an absolute and should not be applied rigidly.

4. The defendant cites Hilt-Dyson v. City of Chicago, Lewis v. Wilkie, and Boss v. Castro to argue the alleged actions cannot amount to adverse employment actions. However, it is imperative to recognize that these cases involved materially different facts from the present situation.

In Hilt-Dyson, the plaintiffs alleged actions like being transferred to less convenient office locations and receiving

undeserved performance evaluations did not constitute adverse actions. Yet unlike the plaintiff's allegations here, there was no indication these acts were connected to or based on a protected characteristic.

Similarly, in Lewis v. Wilkie, the alleged acts were not linked to discriminatory intent and involved instances like a supervisor limiting employee breaks. Boss v. Castro dealt with briefly taking away an employee's work cellphone.

The key distinction is that these cases did not consider how a series of acts specifically targeting an employee's protected trait could cumulatively create a hostile work environment. As the Fifth Circuit recognized in *Walker v. Thompson, 214 F.3d 615, 626 (5th Cir. 2000)*, courts must assess the totality of the circumstances, not just individual acts.

By focusing only on these inapplicable cases requiring overt consequences, the defendant fails to directly address how the plaintiff's allegations regarding the overall impact on their work environment could plausibly establish an adverse action under Title VII. The cited cases are materially distinct and do not justify outright dismissal here.

5. The defendant's argument ignores the plaintiff's claims about the write-up being unjustified and the collective impact establishing adversity. This omission is a significant oversight in addressing the plaintiff's position.

6. The defendant's argument fails to address the plaintiff's assertion that the company's policy defines actions as prohibited retaliation, which raises concerns about the company's own recognition of such actions as adverse.

7. Furthermore, the defendant does not engage with the plaintiff's argument that the failure to investigate violates the company's anti-harassment policy. This oversight is important in the context of assessing the defendant's response.

8. The defendant's argument summarily concludes that the actions do not establish a hostile environment based on color without substantive rebuttal of the detailed allegations. This inadequacy in addressing the specifics of the plaintiff's case leaves room for further consideration.

9. The defendant's statement takes case law out of context, ignores relevant distinctions, and fails to adequately address several of the plaintiff's arguments and allegations. These deficiencies in the response highlight the need for a comprehensive and fair evaluation of the plaintiff's position.

Additionally, let's address the clarification regarding this statement "Plaintiff alleges that he was discriminated against because of his color ("copper brown skin color"). To support this claim, Plaintiff must allege "that the employer instituted adverse employment action against the plaintiff on the basis of [his] protected status." Tamayo v. Blagojevich, 526 F.3d 1074, 1085 (7th Cir. 2008). Plaintiff's Complaint fails this test.

*Tamayo v. Blagojevich, 526 F.3d 1074, 1085 (7th Cir. 2008).* States
previously have stated, on numerous occasions, that a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally. A complaint need not 'allege all, or any, of the facts logically entailed by the claim,' and it certainly need not include evidence."

"Indeed, '[l]itigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of [Federal Rule of Civil Procedure] Rule 8.'"

"A complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis."

"We construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts

alleged, and drawing all possible inferences in her favor."

The language and context from Tamayo clarifies that plaintiffs do not need to plead all facts or proof of causation to state a discrimination claim.

The defendant's argument hinges on a misinterpretation of Tamayo v. Blagojevich. The defendant attributes a heightened pleading standard to Tamayo that is not in line with the case's actual holding.

In Tamayo, it is clearly established that plaintiffs do not need to plead all, or any, of the facts logically entailed by their discrimination claim. The court emphasizes that a complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis.

Furthermore, the court in Tamayo instructs that complaints should be construed in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in the plaintiff's favor.

The defendant's statement contradicts this established legal principle by implying a more demanding pleading standard, one that necessitates an exhaustive presentation of all evidence or proof of causation at the initial pleading stage. This misinterpretation could unjustly hinder the plaintiff's ability to have their claims heard and considered fairly.

In summary, the defendant's misreading of Tamayo v. Blagojevich and the incorrect application of a heightened pleading standard undermines the core principles of notice pleading in discrimination cases. The plaintiff should not be held to an impractical standard that requires them to lay out their entire case in the complaint, as this would defeat the purpose of Federal Rule of Civil Procedure Rule 8 and deny the plaintiff their right to discovery before being put to their proof. The defendant's argument neglects the fundamental tenets of the legal process, which

ensures fairness and the opportunity for plaintiffs to have their claims fairly assessed. In Title VII claims Plaintiffs may allege protected characteristics such as skin color as the perceived basis for discrimination, which is protected under Title VII. And being that my color is the only salient difference from my co-workers other than gender, I have a legitimate good faith reason to believe that color was the motivating factor for the defendant's actions. Critically, the defendant has offered no legitimate, non-discriminatory explanation for said actions. Absent such an explanation, Plaintiff's inferred discrimination that color was the motivating factor remains plausible under Title VII.

## 1. Plaintiff Has Failed to Allege Facts That Meet The Standard of a Hostile Work Environment.

The defendant relies on cases like Vance v. Ball State Univ. to establish an unreasonably high threshold for hostile work environments. As the Supreme Court stated in Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993), "rather than a "mathematically precise test," courts must consider "all the circumstances" in each case". These cases do not set an absolute standard for all hostile work environment claims. Hostile work environment claims are inherently fact-specific and must consider the totality of circumstances, rather than rigidly defining what is severe enough. Furthermore, the defendant fails to provide a valid reason for its officers' actions, unlike in Oest v. Ill. Dep't of Corr., 240 F.3d 605, 613 (7th Cir. 2001), where reprimands were justified within a progressive discipline system. Here, the defendant has not justified the undeserved negative evaluation of the plaintiff.

The defendant incorrectly characterizes the plaintiff's allegations as "petty workplace disputes." However, hostile work environment claims depend on the cumulative impact of various incidents, not classifications as "petty." As the Seventh Circuit held in Hall v. City of Chicago, 713 F.3d 325, 331 (7th Cir. 2013), "the question is whether the discriminatory conduct was severe or pervasive," not whether each act was subjectively "petty." It is not the defendant's role to determine the subjective experiences of the plaintiff. Hostile work environment claims depend on the cumulative impact of various incidents, and it is insufficient to dismiss them as petty without a proper legal analysis. especially when the defendant's policy coincides with plaintiffs' claims "Retaliation against individuals who raise concerns of all forms of violence and harassment Examples of behavior that may constitute retaliation

include the following: Making another employee's job more difficult or providing undeserved negative evaluations." This occurred when plaintiff's coworker was moved after plaintiff filed a complaint, which made his job more difficult. Also, defendant errors the in assuming that they know how the plaintiff feels. The defendant does not have any insight into the plaintiff's subjective experiences, and it is not their role to make determinations about the plaintiff's happiness. The plaintiff has no issues with the job, the issues are with the discrimination and retaliation from the defendant and its agents not the job itself.

The defendant's assertion that reprimands and similar actions do not qualify as "tangible job consequences" is misguided. The defendant's assertion that reprimands lack tangible job consequences overlooks that hostile environments can result from continuous harassment. As the Tenth Circuit explained in *Lounds v. Lincare, Inc.,* *812 F.3d 1208, 1222 (10th Cir. 2015),* "a hostile work environment is ambient and persistent, and affects all aspects of the workplace." hostile work environment is not solely determined by tangible job consequences; it can result from the continuous and pervasive nature of harassment. The defendant's argument places excessive emphasis on isolated incidents while ignoring their potential cumulative effect.

The defendant's selective comparison of the current case to specific cases oversimplifies the law. It is essential to evaluate each case based on its unique facts and circumstances. These comparisons do not justify the premature dismissal of the plaintiff's claims. For The defendant is in error in citing Patton v. Indianapolis Public School Bd. to support their argument that the plaintiff's allegations do not rise to the level of a hostile work environment. The defendant's comparison to Patton v. Indianapolis Public School Bd., 276 F.3d 334 (7th Cir. 2002) is misplaced. As that court acknowledged, claims are "fact-specific" so cases depend on the "totality of circumstances." Id. at 339. Patton does not justify premature dismissal.

In Patton, the court held that the plaintiff's allegations of rude and abrupt behavior, ignored suggestions, and failure to inform employee about changes at work did not establish a hostile work environment. However, the plaintiff's allegations in the present case are completely different. The plaintiff alleges that they were falsely

accused of not working, denied vacation time, given an undeserved negative evaluation, and retaliated against for reporting alleged discrimination.

The court in Patton also recognized that hostile work environment claims are inherently fact-specific and that the totality of the circumstances must be considered. In the present case, the plaintiff's allegations suggest that they were subjected to a continuous and pervasive pattern of harassment that created an abusive work environment.

Therefore, the defendant's citation to Patton is misplaced. Patton is distinguishable from the present case, and it does not support the defendant's argument that the plaintiff's allegations do not rise to the level of a hostile work environment.

In addition, the defendant's citation to Patton is somewhat ironic. Defendant cites Patton v. Indianapolis Public School Bd. to argue the plaintiff's allegations do not constitute a hostile work environment. However, the 7th Circuit ultimately reversed summary judgment in Patton, finding sufficient evidence of a hostile work environment, stating: "We agree that the defendants were entitled to prevail on the retaliation claim, but we believe that the district court erred in granting summary judgment on the hostile work environment claim. Patton has presented sufficient evidence to create a genuine issue of material fact as to whether she was subjected to a hostile work environment." Patton v. Indianapolis Public School Bd., 276 F.3d 334, 347 (7th Cir. 2002)

Given that the 7th Circuit ruled the plaintiff in Patton presented enough evidence to withstand summary judgment on hostile work environment, Patton does not support dismissing the plaintiff's claims, If anything, Patton indicates the court may view the plaintiff's detailed allegations as presenting an even stronger case of a potential hostile work environment.

The defendant's conclusion that the plaintiff's complaint fails to state a legally cognizable claim for a hostile work environment is not substantiated by a thorough analysis of the plaintiff's specific allegations and their potential

cumulative impact, as required in hostile work environment cases.

## 2. Plaintiff Fails to Allege Any Discrimination or "Harassment" Was Based on His Color.

The defendant contends that the plaintiff's claims fall short because there are no allegations to suggest that the company took any action against him based on his "copper brown skin color." Additionally, the defendant argues that the plaintiff's claim relies on mere speculation that his skin color played a pivotal role in the alleged discriminatory treatment.

The defendant's argument commences with a narrow interpretation of discrimination based on color. While the plaintiff asserts that his "copper brown skin color" played a role in the alleged discriminatory treatment, it is crucial to acknowledge that claims of discrimination based on color are not limited to explicit statements or actions solely targeting skin color. Discrimination can manifest in subtler, implicit ways, including differential treatment and unequal opportunities based on an individual's color. Therefore, the defendant's focus on direct, explicit actions may be unduly restrictive.

The defendant mischaracterizes the plaintiff's position as speculation. However, plaintiffs can prove discrimination through circumstantial evidence rather than needing overt proof of bias, as affirmed in *Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003)* The court held, "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence." Plaintiffs can rely on inferences rather than needing overt proof of bias. Furthermore, the Ortiz court explained plaintiffs can use circumstantial evidence like comparative treatment of employees and evidence of pretext to support discrimination claims. Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 764 (7th Cir. 2016). Therefore, the Plaintiffs' inference of the defendant and its officers' differential treatment towards the plaintiff, and the plaintiff's experience opposed to those of different colors is not a mere bald conclusion, as the defendant suggests.

Discrimination can take various forms, including subtle biases, microaggressions, or differential treatment, especially when viewed against how other employees of different backgrounds and colors are treated in similar situations. As evidenced in Exhibit containing the job expectations which shows the consequence of being late and or absent, an employee in the same department Marcos Valencia routinely violated the attendance policy without discipline, representing disparate treatment compared to the plaintiff. Marcos Valencia admitted to me he has never been written up once for his violations; this has also been confirmed by H.R director Miguel Sanchez Mora. If the defendant had followed the policy evenly and equally this would not be, this fact also contradicts defendant's position. There are two differences between us: Marcos Valencia violated the policy and job expectations, and the plaintiff has not, and the plaintiff has copper brown skin and Marcos Valencia has a lighter skin color. However, the plaintiff was given undeserved negative evaluations, and the Marcos Valencia was not disciplined at all, even though it was warranted. This further suggests it is likely the plaintiff's protected characteristic, his color, played a major role in the defendant's actions, being he did nothing to require a legitimate reprimand. Furthermore, I want to point out the defendant had an opportunity to refute this in their response but they have failed to do so. The defendant states that Plaintiff's allegation amounts to nothing more than speculation; a bald conclusion that because he has "copper brown skin," every action company takes must be because of his color. This is false and misleading; the plaintiff has stated that the actions of the defendant, meaning prior acts, were based on his color. I cannot in good faith make such a statement, and I have not. However, I can in good faith state that I believe all the actions from the defendant and its agents that occurred between 9/21 and 6/22 were based on the plaintiff's color. Therefore, it is inaccurate to claim plaintiff is making a bald conclusion.

The defendant cites Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854 (7th Cir. 2005), but this citation is out of context and does not support their argument. The Defendant does correctly cite that the Beamon court stated, "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." Id. at 863. However, this citation is in error, for it is cited out of context. The Beamon case involved general grievances about workplace issues rather than unfairness or discrimination attributed to color or race or any protected characteristic directly. Unlike The Beamon case, the

plaintiff here plausibly alleges unfairness tied specifically to his distinct skin color. The plaintiff has not alleged general unfairness, but unfairness, discrimination, and mistreatment tied to his protected characteristic, specifically skin color. Therefore, Beamon does not preclude the plaintiff from plausibly inferring discriminatory motivation from perceived unfairness when connected to their alleged protected characteristic. Beamon addressed perceiving routine workplace issues as unfair, whereas the plaintiff alleges systemic discrimination and retaliation based on skin color, which falls under Title VII protections.

The defendant seems to over-extend Beamon, which does not categorically preclude inferring discriminatory motivation from perceived unfairness connected to a protected trait like color. As the Beamon court acknowledged, "Sometimes [unfairness] is indeed the result of discrimination prohibited by Title VII." 411 F.3d at 863. Therefore, The Beamon case does not justify dismissing the plaintiff's claims outright, given the nexus to color alleged here. The defendant appears to misapply Beamon by arguing it negates the plaintiff's claims of unfairness motivated by alleged color discrimination. The specifics of the plaintiff's allegations differentiate this case from the circumstances in Beamon. The plaintiff alleges that the distinctiveness of his skin color combined with his treatment strongly indicates discriminatory treatment. Plaintiff's assertion is a step beyond mere perception and suggests a potential nexus to his skin color.

Furthermore, at the motion to dismiss stage, plaintiffs need not conclusively prove discrimination, but rather must plead sufficient facts to raise a plausible inference. As the Rodriguez court held, the "Complaint pleads facts sufficient to allege plausibly that Defendant treated Plaintiff differently than non-Hispanic employees." Rodriguez v. City of N.Y., 649 F. Supp. 2d 301, 307 (S.D.N.Y. 2009). In Rodriguez, the court held that the plaintiff had sufficiently alleged discrimination, even though they had not provided direct evidence of discrimination. This again conflicts with the defendant's position.

The defendant's argument attempts to set an unreasonably high bar for the plaintiff's discrimination claim by demanding explicit and direct evidence of discriminatory intent. However, employment discrimination cases

often rely on inferences drawn from the totality of circumstances, and the plaintiff's assertion that his skin color may be playing a role in his treatment is a valid inference that should not be dismissed as mere speculation, especially when the defendant has not proffered a legitimate, non-discriminatory explanation for said actions.

## CONCLUSION

Defendant's core argument revolves around the establishment of "but for" causation between the plaintiff's protected activity and the alleged adverse actions. However, this argument fails on multiple fronts:

1. Mischaracterization of Pleading Standard: The defendant mischaracterizes the pleading standard, wrongly asserting that the plaintiff must conclusively prove "but for" causation at this early motion to dismiss stage. Contrary to this misrepresentation, the plaintiff only needs to plausibly allege facts allowing a reasonable inference of causation, a requirement adequately met through the detailed timeline presented.

2. Unsupported Presumption of Equal Treatment: The defendant bases its argument on an unsupported presumption that the plaintiff would have been treated the same way even in the absence of the complaints. This assumption dismisses the plaintiff's well-supported allegations, disregarding the core issues raised in the complaint.

3. Temporal Proximity Ignored: The defendant inexplicably overlooks the significant temporal proximity between the plaintiff's complaints and the subsequent adverse actions. This temporal closeness reasonably allows for an inference of retaliation, an inference the defendant fails to counter with substantive evidence.

4. Disregard for Precedent: The defendant's argument disregards well-established legal precedent regarding pleading standards and the use of temporal proximity to prove causation, as seen in cases like Nassar and Calero-Cerezo. The defendant fails to address this binding precedent effectively.

5. Baseless Assertions of a "Self-Fulfilling Prophecy": The defendant's argument relies on baseless assertions, labeling the plaintiff's actions as a "self-fulfilling prophecy." However, these assertions are mere attorney arguments, not evidence, and do not meet the standards set by Iqbal for dismissal.

6. Competing Inferences: The defendant's argument does not dispute the factual allegations themselves but rather challenges the inferences drawn by the plaintiff. However, under the legal standards outlined in Iqbal, competing inferences must be viewed in the plaintiff's favor at this stage.

7. Lack of Contradictory Evidence: The defendant fails to provide any affirmative evidence, such as sworn affidavits, that demonstrate the plaintiff's timeline is inaccurate or provide a reasonable explanation for its actions. The defendant solely relies on countering the plaintiff's alleged inferences without offering substantive evidence.

Furthermore, the defendant's argument appears to hinge on technicalities, subjective judgments, and misinterpretations of legal standards, rather than addressing the core issues raised in the plaintiff's complaint. It's essential to underscore that the defendant's argument attempts to hold the plaintiff to standards not supported by the law. The defendant fails to provide a reasonable justification for its actions and those of its officers. Additionally, the defendant's efforts to frame the plaintiff's complaints as petty are unfounded, as these complaints were legitimate responses to targeted actions. The defendant also avoids addressing the fact that mediation was denied by the defendant itself, not the plaintiff. Furthermore, the defendant fails to address the continued actions of its officers. Defendant has implemented an unreasonable schedule in August 2022, while being well aware of the plaintiff's challenging circumstances, specifically, the premature birth of his son. Importantly, this occurred after the lawsuit was filed on 6/28/22.

In summary, the defendant's causation argument does not adhere to the appropriate pleading standards, disregards the plaintiff's factual allegations, overlooks governing legal precedent, and fails to provide substantial evidence

justifying dismissal under Iqbal/Twombly. Therefore, the defendant's argument does not present a valid justification for dismissal, and the plaintiff's claims should proceed based on the merits of the complaint and the established legal standards."

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court deny the defendant's motion to dismiss. Plaintiff further prays that the Court allows this matter to proceed in order to provide a full and fair opportunity for the presentation of evidence and argument, where the merits of the complaint can be justly determined. Plaintiff also requests any other relief that this Court deems just and proper under the circumstances, including, but not limited to, fees and costs incurred in responding to this motion.

Respectfully submitted,

all rights reserved